Nathan OXEREOK, Appellant,

v.

STATE of Alaska, Appellee.

No. 3902.

Supreme Court of Alaska.

May 2, 1980.

Walter Share, Asst. Public Defender, Juneau, Brian Shortell, Public Defender, Anchorage, for appellant.

W. H. Hawley, Jr., Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

BURKE, Justice.

After trial by jury on a charge of first degree murder,[1] Nathan Oxereok was convicted of the lesser included offense of murder in the second degree.[2] In this appeal Oxereok challenges that conviction on several grounds.

## I. CONVENING OF THE GRAND JURY

Oxereok was indicted by a grand jury convened by a judge of the district court. At the time of the omnibus hearing, Oxereok moved to dismiss the indictment, arguing, among other things, that a grand jury can be lawfully convened only by a judge of the superior court, and that such authority cannot be delegated to a judge of the district court.[3] Contending that the indictment returned against him was therefore invalid, Oxereok moved for dismissal. His motion to dismiss on this ground was denied.

Judge Ethan Windahl, who convened the grand jury, did so under the authority of an order entered by the presiding superior court judge of his judicial district, Judge William H. Sanders. Judge

1. AS 11.15.010 provides:
   *First degree murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.
   In its recent revision of the criminal statutes, the state legislature repealed this section, effective January 1, 1980. Ch. 166, § 21, SLA 1978. The conduct proscribed in the former section is now covered by AS 11.41.100 (Murder in the First Degree).

2. AS 11.15.030 provides:
   *Second degree murder.* Except as provided in §§ 10 and 20 of this chapter, a person who purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life.
   This section was also repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980, during the state legislature's recent revision of the criminal statutes. The conduct proscribed is now covered by AS 11.41.110 (Murder in the Second Degree).

3. Rule 6, Alaska R.Crim.P., provides in part:
   *The Grand Jury.*
   (a) *By Whom Convened.* The presiding superior court judge of the judicial district . . . shall convene the grand jury.

   (t) *Delegation of Duties.* Whenever a superior court is sitting other than where the presiding judge is sitting, the presiding judge may delegate his duties under this rule to another superior court judge.

Sanders' order, entitled: "ORDER OF APPOINTMENT," provided in part:

> [Y]ou are here and now appointed Master for the Superior Court for the purpose of holding arraignments, bail hearings, plea hearings, motion hearings, issuing warrants and summonses, perpetuating testimony, *qualifying and instructing grand jurors, receiving reports and Indictments from grand jurors and order the filing of same . . . . Your authorization is unlimited in felony cases* with the exception that you are not to hold felony criminal trials or conduct felony sentencing hearings. [Emphasis added.]

Prior to its entry, such order was formally approved by this court's then chief justice.

Article IV, section 16 of the Constitution of Alaska provides, in part: "The chief justice of the supreme court shall be the administrative head of *all* courts. *He may assign judges from one court or division thereof to another for temporary service.*" (Emphasis added.) We think the order described in the foregoing paragraph, once it was approved by the chief justice, was tantamount to an assignment made pursuant to article IV, section 16. *Cf. Delahay v. State,* 476 P.2d 908, 914 (Alaska 1970) (appointment of a district judge by letter from governor was effective due to lack of statutory or constitutional provisions prescribing appointment procedures). The only question is whether such an assignment can be lawfully made when the assigned judge is a judge of a court of limited jurisdiction, whose necessary qualifications, term of office and authority are substantially different from those of judges of the court to which he is assigned.

Article IV, section 1 of the state constitution provides, in part: "The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature." Exercising the authority given to it by that section the legislature "established a district court of the State of Alaska for each of the four judicial districts of the superior court of this state." AS 22.15.010. The district court is a court of limited criminal and civil jurisdiction,[4] whose judges, according to statute, need not possess the same qualifications as judges of the superior court. *Compare* AS 22.10.090 [5] *with* 22.15.160(a).[6] The superior court is a "trial court of general jurisdiction." Alaska Const. art. IV, § 3. The constitution requires those appointed to the superior court to be "citizens of the United States and of the State, licensed to practice law in the State," but otherwise leaves the matter of their qualifications to the legislature. Alaska Const. art. IV, § 4. AS 22.15.160(a) does require district court judges to be "citizen[s] of the United States and of the state . . . and at the time of [their] appointment licensed to practice law in the State of Alaska." Thus, at the present time, district court judges must in fact possess the same minimal qualifications required by the constitution for appointment to the superior court. *See* Alaska Const. art. IV, § 4.[7] Like the judges of

---

4. *See* AS 22.15.030–.060.

5. AS 22.10.090 provides:
   *Qualifications of judges.* A judge of the superior court shall be a citizen of the United States and of the state, a resident of the state for three years immediately preceding his appointment, have been engaged for not less than five years immediately preceding his appointment in the active practice of law, and at the time of appointment be licensed to practice law in the state. The active practice of law shall be as defined for supreme court justices.

6. AS 22.15.160(a) provides:
   *Qualifications of district judges and magistrates.* (a) A district judge shall be a citizen of the United States and of the state, at least 21 years of age, a resident of the state for at least one year immediately preceding his appointment, and at the time of his appointment licensed to practice law in the State of Alaska. The supreme court may prescribe additional qualifications.

7. Article IV, section 4, provides:
   *Qualifications of Justices and Judges.* Supreme court justices and superior court judges shall be citizens of the United States and of the State, licensed to practice law in the State, and possessing any additional qualifications prescribed by law. Judges of other courts shall be selected in a manner, for terms, and with qualifications prescribed by law.

constitutional courts, the district court judges are appointed by the governor from a list of candidates approved by the judicial council. AS 22.15.170.

The framers of our state constitution clearly anticipated that courts in addition to those created by the constitution itself might be needed to properly carry out the judicial power of the state. The legislature was given the authority to create such courts and to prescribe the qualifications of the judges thereof. But the framers also authorized the legislature to establish qualifications in addition to those required by the constitution for appointment to the supreme court and the superior court. Thus, in adopting article IV, section 16, authorizing the chief justice to assign a judge from one court or division thereof to another for temporary service, they must also have anticipated that some of the judges so assigned might not possess the qualifications that would be required for appointment to that court on a permanent basis.[8] Given these considerations and the clear language of article IV, section 16 we can, therefore, perceive of no reason why the chief justice's authority to assign a judge "from one court . . . to another for temporary service," should not include the authority to appoint a judge of the district court to serve as judge of the superior court *pro tempore*, regardless of the differences that presently exist in the qualifications required by statute for permanent appointment to either of those courts.

Thus, we hold that Judge Windahl was authorized to convene the grand jury that indicted Oxereok, as a duly assigned judge of the superior court *pro tempore*. Although certain limitations were placed on his authority to act as such, by the terms of the order of assignment itself, his authority to at least convene the grand jury, receive its indictment and order the filing of that indictment is clear.

## II. HEARSAY BEFORE THE GRAND JURY

■ Oxereok also moved to dismiss the indictment upon the ground that inadmissible hearsay evidence was presented to the grand jury in violation of Criminal Rule 6(r).[9]

The record of the proceedings before the grand jury contains more than sufficient evidence to justify the return of an indictment for first degree murder without resort to the hearsay statement complained of. Moreover, we are satisfied that the hearsay statement "did not appreciably affect the outcome of the grand jury's deliberations." See *Metler v. State*, 581 P.2d 669, 674 (Alaska 1978) (footnote omitted). Under these circumstances, "the use of hearsay evidence in violation of Criminal Rule 6(r) will not vitiate the indictment." *State v. Taylor*, 566 P.2d 1016, 1019 (Alaska 1977) (footnote omitted).

## III. PROSECUTOR'S FAILURE TO INSTRUCT THE GRAND JURY

■ Oxereok next contends that the indictment should have been dismissed due to the prosecutor's failure to fully instruct the grand jury on the elements of first degree murder, arguing that he failed to define the terms contained in the indictment and the statute under which Oxereok was charged, and that without such instructions those terms could have had no meaning to the members of the grand jury. He further contends that the grand jury should have been instructed that they could indict for a lesser included offense, such as second degree murder or manslaughter, rather than murder in the first degree, because there was evidence that the defendant was intoxicated, from which it might be inferred that

---

**8.** We need look no further than our own court for an obvious example. In the event of the disqualification or absence of one of the justices, it is often necessary to appoint a superior court judge to serve temporarily on the supreme court, although superior court judges are not required to have the same statutory qualifications as a supreme court justice. Rule 17, Alaska R.App.P.

**9.** Rule 6(r), Alaska R.Crim.P., provides in part: "Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction."

he suffered from diminished capacity to commit all of the elements of first degree murder, as well as evidence that he may have acted in the heat of passion.

We think the terms contained in the indictment were sufficiently clear to be understood by the grand jury and that, in light of the evidence, the prosecutor was not required to instruct as to possible lesser included offenses.

The issue to be decided by the grand jury was whether there was "probability of guilt" of the offense charged. *Coleman v. State*, 553 P.2d 40, 48 (Alaska 1976). Certainly, as recognized by the American Bar Association, "[t]he prosecutor should not bring or seek charges greater in number or degree than he can reasonably support with evidence at trial." ABA Standards Relating to the Prosecution Function and the Defense Function § 3.9(e) (The Prosecution Function) (Approved Draft 1971). But, as recognized by the commentary to that section, the prosecutor must be left with considerable discretion at the charging stage:

> From the prosecutor's point of view, the charging decision is one which must be made at an early stage when all the evidence is not necessarily before him in the form it will take at trial. He must make a preliminary evaluation in order to proceed, knowing that at several later stages he may dismiss some charges or may be compelled to elect. He should not be forced to make these crucial decisions in the pre-indictment stage; hence he may charge in accordance with what he then believes he can establish as a prima facie case. . . . The boundary line which separates so-called "overcharging" from the sound exercise of prosecutorial discretion is too vague and subjective to make this a matter for more definitive treatment than is stated in section 3.9(e). Obviously, a prosecutor must have a broad discretion at the charging stage;

the trial court has ultimate power to deal with abuse of the prosecutor's discretion. *Id.* at 98.

The evidence presented to the grand jury revealed that after a fight with one Wally Merrill, in which Merrill struck Oxereok, Oxereok announced in the presence of several witnesses that he was going to get a gun and kill Merrill. Within a few minutes, he returned to the scene with a shotgun whereupon he shot at Merrill and killed Delores Walker, an "innocent bystander," who was standing beside Merrill. This evidence, we believe, made out a strong prima facie case of murder in the first degree. Thus, we can perceive of no abuse of discretion in the prosecutor's failure to instruct the jury on the fact that it could return an indictment for some lesser included offense. We agree with the American Bar Association's recommended standard, that "[t]he prosecutor should disclose to the grand jury any evidence which he knows will tend to negate guilt," and that he "should recommend that the grand jury not indict if he believes the evidence presented does not warrant an indictment under governing law," but we see no indication that the prosecutor entertained any such belief in this case, or that he withheld any evidence that would negate the defendant's guilt.[10] *Id.* at § 3.6(b)–(c) (The Prosecution Function). While he probably anticipated the fact that at trial the defendant might rely on the defense of diminished capacity, or claim that he acted in the heat of passion, we see no reason for the prosecutor, at the indictment stage, to urge consideration of those possible defenses on the grand jury in this case. "Where the prosecutor is authorized to act as legal adviser to the grand jury he may appropriately explain the law and express his opinion on the legal significance of the evidence but he should give due deference to its status as an independent legal body." *Id.* at § 3.5(a) (The Prosecution Function). The American Bar Association's commentary to § 3.5(a) (The Prosecution Function) states:

---

**10.** Oxereok, in fact, makes no contention that the prosecutor otherwise failed to present exculpatory evidence to the grand jury.

In situations where the prosecutor must prosecute an indictment returned by a grand jury, it is especially important that he be free to express his opinion. A prosecutor who has conducted an adequate investigation and analyzed the evidence is in a position to furnish guidance to the grand jury on the law and the weight of the evidence and should be free to do so whether this leads to a determination to indict or not to indict.

*Id.* at 88.

## IV. *CROSS–EXAMINATION OF WALLY MERRILL*

■ Oxereok's next contention is that the superior court erred in refusing to allow his attorney, on cross-examination, to question Wally Merrill about two past instances of alleged sexual misconduct on the part of Merrill. This evidence was offered to establish that Merrill started a fight with Oxereok in order to get him out of the residence where the killing took place, so that he could have forcible sexual relations with a girl who was there. The offer of proof was that on one occasion Merrill "beat up" a woman when she refused to have intercourse with him, and tried to rape her, and that on a second occasion he had intercouse with another woman against her will.[11]

"The decision[s] of a trial court concerning the admissibility of evidence are reviewable only for abuse of discretion." *Galauska v. State*, 527 P.2d 459, 468 n.20 (Alaska 1974) (citation omitted). Our review of the record in this case, according to that standard, convinces us that the trial court did not err in ruling as it did.

## V. *CHANGE OF VENUE*

■ Prior to trial Oxereok moved for a change of venue. The motion was repeatedly asserted throughout the jury selection process as it became more and more apparent that selection of the jury was being hampered by the number of jurors who knew the victim, who knew the de-

fendant, or had knowledge of the facts of the case. Oxereok's final contention is that the superior court erred in denying the motion.

Oxereok was tried in Nome, Alaska, where the killing took place. Nome is a relatively small city, having a population of approximately 3,000 people. The victim, Delores Walker, was well-known in the community. She was a lifelong resident of Nome and was survived by a family that included three young children. The defendant and his family were also well-known in Nome.

Considerable publicity followed the shooting, which occurred during the early morning hours of July 6, 1977. In the July 8th edition of the Bering Straits, there appeared a front page article entitled "OXEREOK HELD IN WALKER SHOOTING." The article discussed the facts of the case, noted the victim had been a "Valedictorian for her [high school] graduating class," a "cheerleader," and that she was employed as a secretary to Judge Sanders. The article mentioned her surviving family, including her three young children. Also on July 8th the Nome Nugget ran a front page headline stating "JUDGE'S SECRETARY GUNSHOT VICTIM." The victim was described as a "top legal secretar[y], . . . innocent bystander . . . mother of three young children . . . and the daughter of the well-known Teddy Johansen." The July 15th edition of the Nome Nugget again ran front page headlines and an article pertaining to the case. There were also numerous radio broadcasts about the shooting, and in the weeks that followed, various articles and letters to the newspaper added to the publicity surrounding the case.

More important perhaps was the relationship that existed between many of the perspective jurors and one or more of the parties or witnesses involved. This, together with the pretrial publicity caused considerable difficulty in the jury selection

---

11. The trial court did allow Oxereok's attorney to introduce evidence of fights between Oxereok and Merrill, and evidence of Merrill's reputation for violence.

process. The extent of that difficulty is amply illustrated by Appendix A, attached hereto.

AS 22.10.040(1) allows the superior court to change venue "when there is reason to believe that an impartial trial cannot be had." In years past, this court held that a decision whether to grant a change of venue would be reversed only if the decision amounted to an abuse of discretion. *Maier v. City of Ketchikan*, 403 P.2d 34, 39 (Alaska 1965); *Marrone v. State*, 359 P.2d 969, 977 (Alaska 1961). Recently, in *Brown v. State*, 601 P.2d 221, 231 (Alaska 1979), we reiterated that view. *See also Mallott v. State*, 608 P.2d 737, at 747 (Alaska 1980).

The record of the voir dire examination of Oxereok's jury panel does not reveal that any of the impaneled jurors were in fact predisposed to convict him. However, as we recently noted in *Mallott v. State, id.* at 748 (Alaska 1980):

> [T]he voir dire process is not an infallible Geiger counter of juror prejudice, and to rely excessively on its efficacy in uncovering "actual prejudice" places an unrealistic burden on a defendant. Where there has been intensive pre-trial publicity, and a substantial number of venirepersons appear to have been prejudiced by the publicity, the probability that similar prejudices are shared by, but have not been extracted from, impaneled jurors, cannot be ignored. We therefore adopt the A.B.A. proposal that

> > A motion for change of venue or continuance shall be granted whenever it is determined that, because of the dissemination of potentially prejudicial material, there is a substantial likelihood that, in the absence of such relief, a fair trial by an impartial jury cannot be had . . . . A showing of actual prejudice shall not be required.

> [ABA Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press § 8–3.3(c) (2d ed. Tentative Draft 1978).]

Here, due to the extensive pretrial publicity, the highly inflammatory nature of the events, and in view of the obvious potential for prejudice, much of which might even be unconscious but no less real, we conclude that the superior court's refusal to change venue in this case, after voir dire had revealed that a large number of venirepersons were not impartial, amounted to an abuse of discretion. Accordingly, Oxereok's conviction must be set aside and the case remanded for trial in a location other than Nome.[12]

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings.

RABINOWITZ, C. J., not participating.

## APPENDIX A

### List Of Jurors Who Reflected Information Relative To Defendant's Request For Change Of Venue

| NAME | PROBLEM | DISPOSITION |
| --- | --- | --- |
| WAYNE CRAWFORD | Knew both defendant and victim Walker; felt this would affect his impartiality | Excused for cause |
| BRUCE McDANIEL | Knew defendant by name and by sight; knew prosecutor Bundy; was a casual acquaintance of the victim | Peremptorily challenged by defendant |
| EDITH IYATUNGUK | Knew defendant and his family; knew prosecutor Bundy; related to witness Frank Iyatunguk; knew victim | Excused for cause |

---

12. Oxereok also contends that the trial court erred in refusing his request for additional peremptory challenges. Since we have concluded that a change of venue was required, we need not address that issue.

List Of Jurors Who Reflected Information Relative To Defendant's
Request For Change Of Venue

| NAME | PROBLEM | DISPOSITION |
|------|---------|-------------|
| FRED KOST | Knew defendant for ten years and considers himself a close friend | Excused for cause |
| MARY ELLANNA | Knew defendant since birth; knew defendant's family and is a close friend of defendant's mother | Excused for cause |
| CARLA LANG | Knew prosecutor Bundy and his family; husband was a close friend of victim's husband, Buddy Walker; had formed opinion on the merits of the case | Excused for cause |
| JOHN MATTHEWS | Knew prosecutor Bundy | Peremptorily challenged by defendant |
| JAMES ENGWALL | Knew prosecutor Bundy; employed as a news writer for a local radio station | Peremptorily challenged by defendant |
| RUTH HOLBROOK | Heard about the case | Accepted as trial juror |
| WILLIAM McCLINTOK | Read about the case in newspapers | Accepted as trial juror |
| WANDA SMITHHISLER | Knew victim and worked with victim's husband | Excused for cause |
| IRENE WHEELER | Was a close friend of victim; read about the case in the newspapers and discussed it with friends | Excused for cause |
| DOROTHY THOMAS | Knew victim; knew defendant and defendant's family casually; knew witness Wally Merrill | Excused for cause |
| RAYMOND PENATAC | Knew victim (went to school with her) | Excused for cause |
| ED OMEDALINA | Life-long friends with defendant | Excused for cause |
| PHILLIP DUNNE | Knew victim; knew prosecutor Bundy; talked to police and a grand jury witness about the case and had already formed an opinion on the merits of the case | Excused for cause |
| STANLEY ANDERSON | Was a childhood friend of victim; was a casual acquaintance of defendant; had already formed an opinion on the merits of the case | Excused for cause |
| MARY READER | Knew defendant; was a casual acquaintance of victim; attended school with witness Wally Merrill and knew several of the other witnesses | Accepted as trial juror |
| STEPHANIE BARNETT | Casual acquaintance of victim | Peremptorily challenged by defendant |
| BLANCHE WALTERS | Knew defendant; was close friends with victim | Excused for cause |
| WILFRED ANOWLIC | Knew defendant; was a casual acquaintance of victim and her husband | Excused for cause |
| CRAIG OLESON | Was a good friend of victim; casually acquainted with defendant and defendant's family | Excused for cause |

List Of Jurors Who Reflected Information Relative To Defendant's
Request For Change Of Venue

| NAME | PROBLEM | DISPOSITION |
|---|---|---|
| HAROLD BELL | Close friend of victim and defendant's parents; casual acquaintance of defendant | Excused for cause |
| JOANN CRANE | Casual acquaintance of victim; read about the case in the newspapers | Peremptorily challenged by defendant |
| KATHY WONGITTILIN | Knew defendant's parents; read about the case in the newspapers | Accepted as trial juror |
| CORA OLESON | Close friend of victim; knew defendant's parents | Excused for cause |
| EDGAR BOOTH | Discussed case with other people; didn't think he could be fair and impartial | Excused for cause |
| JERRY OLIVER | Casual acquaintance of victim; knew victim's husband | Accepted as trial juror |
| AMELIA IRRIGOO | Read about the case in the newspapers; knew who witness Wally Merrill was | Peremptorily challenged by defendant |
| TILLIE MILLIGROCK | Related to victim by marriage | Excused for cause |
| KAREN NGUYEN | Knew defendant's mother; talked about the case with friends | Peremptorily challenged by defendant |
| LORENA ENGSTROM | Close friend of the victim | Excused for cause |
| MARGARET SEEGANNA | Knew defendant's mother | Accepted as trial juror |
| KAREN DICKSON | Went to school with defendant; knew defendant's family casually; was a casual acquaintance of the victim; read newspaper articles and heard radio accounts of the case; knew several witnesses | Accepted as trial juror |
| KEVIN MICHAEL | Casual acquaintance of victim and husband | Accepted as trial juror |
| CLYDE PISCOYA | Knew the Oxereok family and Merrill family; was related to the defendant; had already formed an opinion on the merits of the case | Excused for cause |
| MARY JANE COUCH | Casual acquaintance of victim | Peremptorily challenged by defendant |
| DONNA MORGAN | Knew victim and her family | Excused for cause |
| JOHN BRECKON | Casually acquainted with victim; knew victim's husband | Peremptorily challenged by defendant |
| MINA PUNGOWIYI | Close friend of victim | Excused for cause |
| CHARLES PRESTON | Casually acquainted with victim's husband | Peremptorily challenged by defendant |
| PERCY ANGNABOOGUK | Knew defendant and his family; knew victim | Excused for cause |
| STEVE DICKSON | Knew victim's family | Excused for cause |
| FRIEDA LARSEN | Related to defendant | Excused for cause |
| CANDY DAVIS | Discussed case with one of the witnesses who is also her employer | Excused for cause |

List Of Jurors Who Reflected Information Relative To Defendant's
Request For Change Of Venue

| NAME | PROBLEM | DISPOSITION |
|------|---------|-------------|
| LAVONNE HENDRICKS | Knew prosecutor Bundy | Accepted as trial juror |
| NANCY MENDENHALL | Knew one of the witnesses | Accepted as trial juror but excused during trial because she knew defendant's mother |
| STANLEY MORGAN | Knew defendant; knew victim and victim's family | Peremptorily challenged by prosecution |
| BERTHA ADSUNA | Son John Adsuna was a witness | Excused for cause |
| JOSEPHINE FRANCES | Knew defendant since birth and knew defendant's family; knew victim | Excused for hearing problems |
| HENRY M. HOWARD | Was a close friend of defendant | Excused for cause |
| PHILLIP KUGZRUK SR. | Knew defendant's mother; knew one of the witnesses; was casually acquainted with victim's husband | Excused for cause |
| IVA GANDIA | Knew witness John Adsuna; heard him discuss the case and had formed an opinion on the merits of the case | Excused for cause |
| JOHN RIDDELL | Personal friend of Judge Sanders (victim's employer) | Peremptorily challenged by prosecution |
| DAVID MALONEY | Knew defendant's mother; knew victim casually | Excused for health reasons |
| JEAN SILVERNAIL | Knew victim casually; knew witness Wally Merrill casually | Accepted as trial juror |
| EUGENE OLANNA | Knew defendant and his mother since defendant's birth | Excused for cause |
| MATTHEW IYA | Had already made up his mind about the case | Excused for cause |
| AL MAZONNA | Was related to defendant and knew him since birth | Excused for cause |
| CHARLES DICKSON | Close friend of the victim | Excused for cause |
| JULIE FARLEY | Knew victim's family | Excused for cause |
| RITA JOHNSON | Knew victim | Excused for cause |
| ARLENE TOOTKAYLUK | Knew victim's husband; knew several witnesses by name; heard about the case on the radio | Accepted as trial juror |
| HENRY KOYUK | Knew victim's husband; read about the case in the newspapers and heard about it on the radio | Accepted as an alternate juror and replaced juror Mendenhall during trial |
| VERNON MILLIGROCK | Went to school with defendant; knew several of the witnesses; read newspaper accounts of the case | Peremptorily challenged by the prosecution |
| PAUL STERLING | Knew defendant by sight; knew victim and victim's husband | Accepted as an alternate juror |