Dan H. JERREL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1627.

Court of Appeals of Alaska.

June 3, 1988.

Carol A. Brenckle, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nathan A. Callahan, Asst. Dist. Atty., Kenai, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

A jury convicted Dan H. Jerrel of criminal mischief in the third degree, AS 11.46.-484(a)(1), for defacing a wall mural with red spray paint in Homer on October 31, 1985. A retaining wall had been constructed in front of the parking lot of Proctor's Grocery Store on Pioneer Avenue in conjunction with the renovation of the street,

and a mural had been painted on the wall depicting the silhouettes of several musicians and dancers. District Court Judge Michael L. Wolverton sentenced Jerrel to sixty days with fifty days suspended, directed Jerrel to pay restitution to the Municipality of Homer in the amount of $819.99, and placed Jerrel on probation for two years. Jerrel appeals Judge Woverton's denial of his motion for change of venue, denial of his request for additional peremptory challenges of prospective jurors, and denial of his challenges of two jurors for cause. Jerrel also appeals District Court Judge Martha Beckwith's denial of his motions to suppress evidence obtained from electronic search warrants. We reverse on the ground that Jerrel was denied his right to trial by an impartial jury.

### THE MOTION TO CHANGE VENUE

Prior to the *voir dire* of the jury, Jerrel moved for a change of venue on the ground that the adverse pretrial publicity made a fair trial in Homer impossible. Judge Beckwith denied the motion without prejudice, finding that the issue could be more fully addressed after completion of the *voir dire* of the jurors. At the conclusion of the jury *voir dire*, Jerrel again moved for a change of venue. Judge Wolverton denied the motion, finding that Jerrel had received a fair and impartial jury. On appeal, Jerrel argues that Judge Wolverton erred in denying the motion.

Jerrel was tried in Homer, which is a relatively small community. The mural that Jerrel damaged was a well-known landmark in the community. As a result, considerable publicity followed the vandalism. The local newspaper, the Homer News, published several articles about the incident. Information about the crime was also presented over the radio through a crime stoppers program. The newspaper articles discussed the facts of the case and the community outrage at the vandalism. The articles also briefly described the incriminating testimony of three witnesses who were referred to in the complaint. Finally, the articles discussed the fact that Jerrel had filed civil lawsuits against various parties connected with the case.

The district court shall grant a change of venue, under AS 22.15.080(1), when "there is reason to believe that an impartial trial cannot be had." A lower court's decision to deny a change of venue motion will be reversed only if the decision amounts to an abuse of discretion. *Arnold v. State*, 751 P.2d 494 (Alaska App.1988). We recognize, however, that the trial judge is in a better position to detect the presence or absence of juror prejudice in evaluating the circumstances surrounding the trial. *See Brown v. State*, 601 P.2d 221, 229–30 (Alaska 1979).

In *Mallott v. State*, 608 P.2d 737 (Alaska 1980), the Alaska Supreme Court set forth the specific standard to be applied by the trial court in deciding whether to grant a change of venue motion after completion of *voir dire*. The court stated that the defendant bears the ultimate responsibility to demonstrate that the "pretrial publicity actually resulted in 'a partiality that could not be layed aside' in those jurors finally seated to adjudicate guilt or innocence." *Id.* at 748 (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975)). In addition, the *Mallott* court adopted the A.B.A. proposal that:

> A motion for change of venue or continuance shall be granted whenever it is determined that, because of the dissemination of potentially prejudicial material, there is a substantial likelihood that, in the absence of such relief, a fair trial by an impartial jury cannot be had.... A showing of actual prejudice shall not be required.

*Id.* at 748 (citing II *Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press*, § 8–3.3(c) (Tent. Draft 1978) (hereinafter 1978 ABA Standards)).

The supreme court further refined the standard which a trial judge should apply in deciding whether to grant a motion for change of venue due to pretrial publicity in *Oxereok v. State*, 611 P.2d 913 (Alaska 1980). The defendant was charged with murder and tried in Nome, a small commu-

nity of 3,000 persons, which was also the location of the killing. Because the pretrial publicity surrounding the case was substantial, and because the defendant, the victim, the witnesses, and their families were well-known in Nome, there was considerable difficulty in selecting a jury. The supreme court found that although *voir dire* did not reveal that "any of the impaneled jurors were in fact predisposed to convict [Oxereok]," the trial court erred when it denied the defendant's repeated requests for a change of venue. *Id.* at 919. The court stated:

> [T]he *voir dire* process is not an infallible Geiger counter of juror prejudice, and to rely excessively on its efficacy in uncovering "actual prejudice" places an unrealistic burden on a defendant.

The court concluded that a change of venue was warranted due to "the extensive pretrial publicity, the highly inflammatory nature of the events, and ... the obvious potential for prejudice." *Id.*

■ Applying these standards in the instant case, we conclude that Judge Wolverton did not abuse his discretion in declining to grant Jerrel's motion for change of venue. Seventeen jurors were examined in this case. Although most of them had some prior knowledge about the crime, they could recall little about the details. Furthermore, they indicated that they could be fair and impartial. In addition, unlike *Oxereok*, most of the prospective jurors in Jerrel's case did not know the parties or witnesses at all, and those that did knew the individuals on only a limited basis, *i.e.*, by sight. The two prospective jurors who knew the parties or witnesses on more than casual basis, and who indicated that the relationships would affect their ability to try the case impartially, were removed. Moreover, the pretrial publicity did not expose the jurors to "highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material." *Mallott*, 608 P.2d at 749 (quoting 1978 ABA Standards § 8–3.5(b)). Instead, the press coverage consisted primarily of facts which were, for the most part, not in dispute at trial.

From a review of the newspaper articles and the responses from the jurors, it appears to us that most of the jurors were aware of the nature of the charges against Jerrel. Prior awareness of charges, however, is not inherently prejudicial. *Chase v. State*, 678 P.2d 1347, 1352 (Alaska App. 1984). Although the extensive press coverage of the case in such a small community is cause for concern, we think that it is unlikely that the press accounts had any significant impact on the trial. In fact, the two prospective jurors who were removed from the case for their relationship with the witnesses or parties were the only members of the venire pool who expressed an inability to be impartial. Under these circumstances, there is no reason to presume prejudice or to question the assurances given by the impaneled jurors that they would try the case in a fair and impartial manner. *Arnold*, 751 P.2d at 500; *Nylund v. State*, 716 P.2d 387, 389 (Alaska App.1986). From the responses which the jurors made on *voir dire*, we believe that it was reasonable for the trial judge to conclude that there was no reason to believe that a fair trial by an impartial jury could not be had. Accordingly, we find that Judge Wolverton did not err in refusing to grant a change of venue.

### THE CHALLENGES FOR CAUSE AND PEREMPTORY CHALLENGES

■ During the *voir dire* examination, Jerrel challenged jurors Eva Stovall and Paul Folley for cause. Judge Wolverton denied these two challenges. Jerrel also moved for three additional peremptory challenges after he exhausted the three peremptory challenges he was entitled to under Alaska Criminal Rule 24(d). Judge Wolverton denied the request, finding that the *voir dire* responses indicated that the pretrial publicity would not affect the jurors' ability to try the case in a fair and impartial manner. On appeal, Jerrel contends that Judge Wolverton abused his discretion in denying the two challenges for cause, and in denying the request for additional peremptory challenges.

In *Mallot,* the supreme court adopted the following American Bar Association recommendation regarding the acceptability of prospective jurors who have been exposed to pretrial publicity:

> Both the degree of exposure and the prospective juror's testimony as to state of mind are relevant to the determination of acceptability. A prospective juror testifying to an inability to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror remembers information that will be developed in the course of the trial, or that may be inadmissible but does not create a substantial risk of impairing judgment, that person's acceptability shall turn on the credibility of testimony as to impartiality. If the formation of an opinion is admitted, the prospective juror shall be subject to challenge for cause unless the examination shows unequivocally the capacity to be impartial. A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be subject to challenge for cause without regard to the prospective juror's testimony as to state of mind.

608 P.2d at 749–50 (citing 1978 ABA Standards § 8–3.5(b)). The commentary to this section [1] provides:

> There are two situations in which the disqualification [of prospective jurors] is automatic ...: (1) when a prospective juror claims to be unable to overcome preconceptions, and (2) when the prospective juror has seen or heard such incriminating or highly inflammatory material that any claim of impartiality cannot be credited no matter how sincere it appears to be.

II Standards for Criminal Justice § 8–3.5(b) commentary at 47 (Approved Draft 1978). On the other hand, when a juror has some knowledge of the facts, or has formed an opinion about the case that is not based on highly inflammatory material, the juror is not automatically disqualified. Instead, the juror is subject to further inquiry concerning both the degree of exposure and the juror's resulting state of mind. *Id.*

With these standards in mind, we have reviewed the *voir dire* examination of the two jurors whom Jerrel claims should have been excused for cause. The first unsuccessfully challenged juror, Eva Stovall, indicated that she had formed an opinion about the case from reading newspaper articles. Stovall also stated that she believed the case should be tried in Kenai because the residents of Homer were "so upset" about the damage to the wall. Stovall indicated that although she would try to be fair and impartial, she had some doubts about her ability to do so because she had never been a juror before. Stovall concluded, however, by stating that she would do her best to try the case in an impartial manner.

The other unsuccessfully challenged juror, Paul Folley, stated that although he had no preconceived notions regarding Jerrel's guilt or innocence, he could not say whether he would "totally discard" previous knowledge because it would be "unhuman." Folley also indicated that he would expect Jerrel to dispel the information presented in the newspapers about the case. When the court explained the law on the right to silence and the burden of proof to Folley, however, he indicated that he possessed the ability to try the case in a fair and impartial manner. In light of these responses, Jerrell argues that both jurors should have been excused for cause.

The information presented in the newspaper articles was neither inherently prejudicial nor inflammatory. Although Folley and Stovall had some knowledge about the case from reading the articles, neither appeared to have any significant recollection. Both jurors indicated that they would try

---

**1.** Section 8–3.5(b) of the 1978 ABA Standards was adopted in II *Standards for Criminal Justice* § 8–3.5(b) (Approved Draft 1978).

their best to be fair and impartial. Pursuant to the A.B.A. Standards set forth in *Mallott*, neither Stovall nor Folley was subject to automatic disqualification. Instead, their ability to serve as jurors depended on the court's assessment of the credibility of their statements during *voir dire* concerning their ability to be impartial.

Although both jurors indicated that they would try their best to be fair and impartial, they also hesitated in responding to *voir dire* questions concerning their ability to be impartial. Moreover, Folley indicated that he was not certain that he could disregard his prior knowledge of the case. Folley's qualified response that he had no preconceptions, and Stovall's equivocal description of her impartiality indicates that these jurors might not have possessed the appropriate state of mind to serve on the panel in Jerrel's case. This issue is an extremely close one.

We have generally recognized that, in order to preserve a defendant's right to an impartial jury, the trial court may respond to a defendant's challenges of prospective jurors for cause in either one of two ways. First, the trial court may grant a defendant's challenges for cause in a liberal manner. Second, the trial court may decline to grant challenges for cause in a liberal manner so long as the court offers the defendant extra peremptory challenges. For example, in *Mallott*, the defendant claimed that the trial court improperly denied a challenge for cause. The court rejected this claim, pointing out that the trial judge had offered Mallot additional peremptory challenges, and that Mallott had accepted only one of these.[2] The court concluded that because none of the unsuccessfully challenged jurors sat on the jury panel, the trial judge had not violated Mallott's right to an impartial jury. *Id.* at 749–50.

Similarly, in *Chase*, 678 P.2d at 1352–53, the defendant challenged several jurors for cause. Although we found that one of the

jurors arguably should have been excused for cause, we concluded that the trial court's failure to allow the defendant to excuse that juror did not constitute reversible error. We pointed out that the trial court had granted the defendant six additional peremptory challenges, giving him a total of sixteen. The defendant was then able to peremptorily challenge the jurors that he had unsuccessfully challenged for cause. We concluded that the additional number of peremptory challenges granted by the trial court enabled Chase to select an impartial jury despite the fact that the court may have improperly denied one challenge for cause.

In the instant case, Jerrel indicated that he would have challenged juror Stovall[3] if the trial court had granted Jerrel's request for additional peremptory challenges. Additional peremptory challenges would, therefore, have enabled Jerrel to select an impartial jury despite the fact that the trial court may have improperly denied the challenge of Stovall for cause. Unfortunately, the court elected not to pursue this option. We believe that the court's failure to grant the challenge of Stovall for cause, coupled with the court's failure to allow the extra peremptory challenges, violated Jerrel's right to an impartial jury. Therefore, we reverse on this basis.

## THE MOTIONS TO SUPPRESS

■ On December 12, 1985, and January 9, 1986, Sergeant Luther Christopher applied for an electronic search warrant to secure information relating to the defacement of Proctor's wall. Specifically, Sergeant Christopher requested the court's authorization to wire Tate Thoms to record person-to-person conversations which Thoms was expected to have with Jerrel on December 13 and 14, 1985, and January 10 and 11, 1986, between the hours of 6:00 p.m. and 6:00 a.m. The affidavit in support of each application read as follows:

2. The court cited 1978 ABA Standard § 8–3.5(c): Whenever there is a substantial likelihood that, due to substantial publicity, the regularly allotted number of peremptory challenges is inadequate, the court shall permit additional challenges to the extent necessary for the impaneling of an impartial jury. 608 P.2d at 749 n. 30.

3. Folley was excused when Jerrel exercised a peremptory challenge against him.

The undersigned ... reasonably believes that from the [person] known to affiant as Dan Jerrel, and appearing to affiant to be a Caucasian male, age of twenty-six years, and 5′ 11″, 200 pounds, with dark hair, date of birth December 24, 1959, who is presently in or near Homer, Alaska ... there will be certain statements made in a person-to-person conversation, namely: information referring to the criminal mischief of Proctor's wall and any part Jerrel ... had in it, by recording statements pertaining to that or any other crime which, if uttered, will constitute evidence of the particular crime of AS 11.46.482(a)(1), criminal mischief, and would tend to show that Dan Jerrel committed such crime. Your affiant further believes that it would be desirable, and in the interest of future police investigations, not to reveal the identity of Tate R. Thoms by informing Dan Jerrel ... of any electronic surveillance or recording that may take place in the event that this application for Search Warrant by electronic surveillance and/or recording is granted.

Sergeant Christopher testified in support of each application. He related the incriminating version of events as told to him by Howard Cagle, Donald Jones, Thoms, and Andy Slayden. The informants had each spoken of Jerrel's involvement in the crime.

On December 12, 1985, and on January 9, 1986, District Court Judge James C. Hornaday granted Sergeant Christopher's applications for a search warrant. The warrants resulted in the recording of conversations between Thoms and Jerrel. The evidence was used against Jerrel at trial.

In April 1986, Jerrel's attorney moved to suppress all evidence seized pursuant to the December and January warrants. In addition, Jerrel filed a *pro se* motion to suppress both warrants. Jerrel claimed that the applications failed to establish probable cause because the informants were not shown to be reliable, and because the time and subject matter of the conversations to be recorded were not described with reasonable specificity. Jerrel alleged that Thoms was unreliable because Thoms

had been promised assistance in a pending reckless driving charge in return for his cooperation. District Court Judge Martha Beckwith denied the motions. On the day of trial, Jerrel filed another *pro se* motion to suppress, again claiming that the issuance of the warrants had been improper. Relying on Judge Beckwith's ruling, Judge Wolverton denied the motion. Jerrel, raising the same arguments he presented below, now appeals Judge Beckwith's and Judge Wolverton's rulings. We find that a review of the record reveals both Judge Beckwith's and Judge Wolverton's denials of the motions to suppress were proper.

In *Erickson v. State,* 507 P.2d 508, 517–18 (Alaska 1973), the Alaska Supreme Court held that:

A valid arrest may be made on information provided by a "citizen informer" and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs.

It seems clear, in the instant case, that Cagle and Jones were trustworthy and reliable because of their citizen status. They apparently informed Sergeant Christopher about the crime out of a sense of civic duty. In addition, as Judge Beckwith noted, many of the details of the testimony of each informant were verified and corroborated by the other informants.

In addition, Jerrel's claim that the reduction of Thoms' reckless driving charge was associated with his testimony concerning the warrants is unpersuasive. Jerrel has failed to adequately brief this issue, and we may reject it on that basis alone. Even if Jerrel's claim of Thoms' unreliability were true, however, the testimony of the other witnesses is more than sufficient to uphold the issuance of the warrants.

■ Finally, Jerrel's claim that the warrants lacked specificity in time and content is without merit. In *Jones v. State,* 646 P.2d 243, 248–49 (Alaska App.1982), we held that the affidavit and warrant must describe with reasonable specificity the time and subject matter of the conversation

to be monitored. In addition, a description of the nonconsenting party to the monitored conversation must be included. *Id.* There is no question that this standard was met in the instant case. The warrants were specifically limited to conversations expected to occur during two twelve-hour periods and to conversations between Jerrel and Thoms about the vandalism of the wall or some other crime. In addition, the affidavits and warrants named and described with sufficient detail the party to be monitored. Accordingly, we find that the trial court properly denied the motions to suppress.

The conviction is REVERSED and this case is REMANDED for proceedings consistent with this opinion.

BRYNER, Chief Judge, concurring.

I agree with the result reached in the majority opinion, and with the opinion itself except to the extent that it suggests that a trial court's duty to excuse jurors for cause is interchangeable with the court's power to grant additional peremptory challenges. Challenges for cause and peremptory challenges are, of course, conceptually different and are governed by differing procedural requirements. While I agree that in many instances the erroneous denial of a challenge for cause may be cured by allowing an extra peremptory challenge, this fact does not to any extent relieve the trial court of its duty to consider and rule on challenges for cause to the best of its ability, applying the rules applicable to such challenges. To suggest otherwise is to inject unnecessary and unwarranted confusion into the distinction between two legally and analytically separate forms of juror challenge.